IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


ROGER BLAKE, M.D.                                        PLAINTIFF

VS.                               CIVIL ACTION NO. 3:05CV187BS

THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER,
DR. DANIEL JONES, IN HIS OFFICIAL CAPACITY
AS CHANCELLOR OF THE UNIVERSITY OF MISSISSIPPI
MEDICAL CENTER, JAMES ROY KLUMB, ED BLAKESLEE,
THOMAS W. COLBERT, DR. RICHARD A. CROFTS, DR.
L. STACY DAVIDSON, JR., DR. D. E. MAGEE, JR.,
DR. BETTYE HENDERSON NEELY, VIRGINIA SHANTEAU
NEWTON, BOB OWENS, AUBREY PATTERSON, ROBIN
ROBINSON, SCOTT ROSS, AMY WHITTEN, IN THEIR
OFFICIAL CAPACITIES AS MEMBERS OF THE BOARD
OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER
LEARNING AND PAUL TRUSSELL, INDIVIDUALLY AND
AS DIRECTOR OF HUMAN RESOURCES OF THE UNIVERSITY
OF MISSISSIPPI MEDICAL CENTER                           DEFENDANTS


OPINION AND ORDER

This cause is before the Court on the following Motions:

1)    Defendant Paul Trussell's Motion to Dismiss / Motion for
      Summary Judgment (filed July 6, 2005, under docket entry no.
      25);

2)    Motion of Defendant University of Mississippi Medical Center
      (hereinafter "UMC") to Dismiss and Motion for Summary Judgment
      as to Equitable and State Law Claims (filed July 28 and 29,
      2005, under docket entry nos. 28 and 29, respectively);[1]

_____

[1] UMC filed the exact same Motion under docket entry no. 28
and 29.  Both Motions seek dismissal and/or summary judgment as to

3)  Plaintiff Roger Blake's Motion to Strike Certain Exhibits
    Annexed to Defendant Paul Trussell's Motion to Dismiss /
    Motion for Summary Judgment (filed November 7, 2005, under
    docket entry no. 44);

4)  Defendant Paul Trussell's Motion to Strike Certain Exhibits
    (filed November 14, 2005, under docket entry no. 61); and

5)  Plaintiff Roger Blake's Motion to Strike (filed November 30,
    2005, under docket entry no. 70).

Having considered the Motions, Responses, Rebuttals and all
attachments to each, as well as supporting and opposing authority,
the Court finds that:

1)  Trussell's Motion to Dismiss / Motion for Summary Judgment is
    well taken and should be granted;

2)  Motion of UMC to Dismiss and Motion for Summary Judgment as to
    Equitable and State Law Claims is well taken and should be
    granted;

3)  Blake's Motion to Strike Certain Exhibits Annexed to Defendant
    Paul Trussell's Motion to Dismiss / Motion for Summary
    Judgment is well taken in part and should be granted in part,
    and the Motion is not well taken in part and should be denied
    in part;

4)  Trussell's Motion to Strike Certain Exhibits is not taken and
    should be denied; and

the claims against UMC and all individual Defendants.

5)   Blake's Motion to Strike is well taken in part and should be granted in part, and the Motion is not well taken in part and should be denied in part.

## I.  Factual Background and Procedural History

This cause of action arises out of the alleged wrongful termination of Plaintiff Roger Blake, M.D. from his position as Assistant Professor of the Department of Surgery with Defendant UMC.  Blake's employment with UMC began at some time in year 2000. At all times which are relevant to this lawsuit, Blake was under an employment contract with UMC which began July 1, 2004, and ended June 30, 2005. See Employment Contract, attached as Exhibit "K" to Bill of Particulars (docket entry no. 18).  The employment contract contains a provision which allows for employment termination for "contumacious conduct."[2]  Id.   On September 30, 2004, Blake allegedly engaged in inappropriate sexual conduct with Dr. Heather Wallace, a female urologist at UMC.  Specifically, Wallace alleges that Blake duped her "into examining his erect penis." Trussell's Motion to Dismiss / Motion for Summary Judgment (docket entry no. 25), p. 2, ¶ 5.

After the incident was reported to UMC officials, Blake was placed on administrative leave, with pay, effective October 1, 2004. See Letter from Turner to Blake dated October 1, 2004,

---

[2]  "Contumacious" is defined as "stubbornly perverse or rebellious; willfully disobedient." Webster's College Dictionary 297 (1995).

attached as Exhibit "A" to Bill of Particulars; Letter from Woodrell to Blake dated October 1, 2004, attached as Exhibit "B" to Bill of Particulars.   On October 4, 2004, Trussell and Barbara Smith met with Blake to discuss the allegations.  Trussell Affidavit, p. 2, ¶ 6, attached as Exhibit "E" to Trussell's Motion to Dismiss / Motion for Summary Judgment.   Trussell was the Director of Human Resources and Smith was the Equal Employment Opportunity Director at UMC.

Both Wallace and Blake were asked to submit to polygraph examinations.   Wallace's polygraph exam occurred on October 4, 2004. Wallace Polygraph Examination Report, attached as Exhibit "C" to Trussell's Motion to Dismiss / Motion for Summary Judgment.  No deceptive responses were recorded.  Id.   Blake submitted to a polygraph examination on October 12, 2004.  Blake Polygraph Examination Report, attached as Exhibit "G" to Trussell's Motion to Dismiss / Motion for Summary Judgment.  A deceptive response was indicated regarding whether Blake's penis was erect during Wallace's examination of him.  Id.   The polygraph examiner stated "[i]t is also the opinion of this examiner that counter measures were most likely employed to influence the exam." Id.

Seeking to finally resolve the matter, Edwin Cofer wrote Dennis Horn a settlement letter dated November 9, 2004 (hereinafter "November 9 letter").  Cofer was a staff attorney with UMC and Horn

was the attorney representing Blake.  In relevant part, the November 9 letter stated:

> 1.  We will make no report to the Physicians Databank. We will report to the Mississippi State Board of Medical Licensure, and whether or not it reports to the Databank is not within our control.
> 2.  Upon the receipt of receipt of [sic] Dr. Blake's written and signed resignation from all positions held at the University of Mississippi Medical Center and its instrumentalities, which may be written to only take effect upon the accomplishment of the provisions of this paragraph, we will request that Dr. Blake's suspension of privileges be lifted and that all mention of the suspension be expunged from his credentialing file.  If both of our requests are granted, the resignation will then take effect; if either is not granted, the resignation will not take effect.[3]

See November 9 letter, attached Exhibit "F" to Bill of Particulars (footnote added).

Via two letters dated November 15, 2004 (hereinafter "November 15 letters"), from Blake to Dr. William Turner, Chairman of the Department of Surgery at UMC, Blake resigned from his position as Assistant Professor of Surgery. See November 15 letters, attached as part of composite Exhibit "E" to Bill of Particulars.  Blake's resignation was premised on lifting the suspension of his hospital privileges and expunging any mention of the suspension from his

---

[3] Although not specifically described in any of the pleadings before the Court, it appears that the parties viewed Blake's position as Assistant Professor at UMC, and his position as a staff physician with UMC, separate and distinct from one another.  Based on the above settlement offer, it appears that if Blake resigned from his position as Assistant Professor, then the suspension of his "privileges" as a staff physician with UMC would be lifted, and he would be able to continue to treat patients at UMC.

personnel records. <u>Id.</u>  Three days later, counsel for Blake was informed that reinstatement of hospital privileges could be done administratively, but that expungement of negative references in Blake's personnel file required authorization by the Executive Committee of the Medical Staff at UMC (hereinafter "Executive Committee"). <u>See</u> letter from Cofer to Horn dated November 18, 2004, attached as Exhibit "G" to Bill of Particulars.

The Executive Committee met on December 1, 2004, and rejected the proposition of expunging Blake's suspension from the credentialing file. <u>See</u> letter from Cofer to Horn dated December 2, 2004, attached Exhibit "H" to Bill of Particulars; UMC Executive Committee Minutes, attached as Exhibit "D" to Trussell's Motion to Dismiss / Motion for Summary Judgment.  Cofer nevertheless held the offer open to recommend the restoration of Blake's hospital privileges, if Blake would agree to resign from his job as Assistant Professor of Surgery. <u>See</u> letter from Cofer to Horn dated December 2, 2004, attached Exhibit "H" to Bill of Particulars. That offer was to remain open until December 3, 2004. <u>Id.</u>

The next communication between the parties was a letter from Trussell to Blake, dated December 10, 2004 (hereinafter "December 10 letter"), which stated in part:

> As a result of unprofessional conduct exhibited by you on or about September 30, 2004, which involved a resident physician, your employment with the University of Mississippi Medical School is herewith terminated effective December 10, 2004.
> * * * * *

> In accordance with UMC policy you have the right to file
> a grievance in regards to this decision.  Attached you
> should find a copy of the grievance procedure.

See December 10 letter, attached as Exhibit "I" to Bill of

Particulars.

Aggrieved by his termination from employment with UMC, Blake

filed the subject suit in this Court on March 21, 2005.  According

to Blake's Complaint:

> On or about October 1, 2004, while performing his duties
> under a yearly contract, the plaintiff received a letter
> purporting to suspend all of his privileges at [UMC].  On
> or about December 10, 2004, while still under a contract
> guaranteeing his property interest in his employment, the
> plaintiff received a letter terminating his emolument as
> an assistant professor at [UMC].

Complaint, p. 3, ¶ 11.  Blake's claims are further summarized by

the following excerpt from the Complaint:

> This action is brought by Roger Blake, M.D., who seeks
> all legal remedies for violation of his constitutional
> rights under color of law as provided by the Civil Rights
> Act of 1871, 42 U.S.C. § 1983, and pendent Mississippi
> law claims for violation of the faculty contract non-
> renewal provisions of the Defendants' Employment Policies
> and[, in the alternative,] to enforce a settlement with
> Defendants whereby Defendants and Dr. Blake agreed, in
> return for Dr. Blake's resignation, to reinstate Dr.
> Blake's hospital privileges and expunge all disciplinary
> and negative matter from any and all of the Defendants'
> personnel and other files.

Complaint, pp. 1-2, ¶ 2.

Although not specifically enumerated in the Complaint, Blake's

claims appear to be the following.

• 42 U.S.C. § 1983: violation of substantive due process and

procedural due process, Complaint, p. 4, ¶ 16;

7

- mental anguish, Complaint, p. 4, ¶ 18;

- damage to professional reputation, Complaint, p. 4, ¶ 18;

- breach of contract, Complaint, p. 4, ¶ 20;

- punitive damages, Complaint, p. 4, ¶ 21;

- alternative claim: acceptance of Blake's resignation from his position as Assistant Professor of Surgery in return for reinstatement of his staff privileges as a physician at UMC, and expungement of Blake's personnel file in regard to his suspension, Complaint, p. 5, ¶ 24.

Blake seeks an unspecified amount of compensatory and punitive damages.

The capacities in which the Defendants are sued are significant factors in this case. Following is a list of the categories of Defendants and the capacities in which each category is sued.

<u>Defendant Dr. Daniel Jones</u>:

Jones is the Chancellor of UMC. He is sued in his official capacity.

<u>Defendants James Roy Klumb, Ed Blakeslee, Thomas W. Colbert, Dr. Richard A. Crofts, Dr. L. Stacy Davidson, Jr., Dr. D. E. Magee, Jr., Dr. Bettye Henderson Neely, Virginia Shanteau Newton, Bob Owens, Aubrey Patterson, Robin Robinson, Scott Ross and Amy Whitten</u>:

These Defendants are members of the Board of Trustees of State Institutions of Higher Learning of the State of Mississippi.  Each is sued in his / her official capacity.

<u>Defendant Paul Trussell, Jr.</u>:

As stated above, Trussell is the Director of Human Resources for UMC.  He is sued in both his official capacity and his individual capacity.

<u>Defendant UMC</u>:

UMC is a department of the University of Mississippi created and existing pursuant to § 37-115-1, *et seq*. of the Mississippi Code. Blake contends that UMC was his "employer" within the meaning of 42 U.S.C. § 1983.

On April 19, 2005, a Motion to Dismiss was filed.  The Opinion and Order which addressed that Motion was filed on June 23, 2005 (hereinafter "June 23 Opinion"), under docket entry no. 23.  Some claims were dismissed through the holdings in the June 23 Opinion, and some claims remain.  At the conclusion of the June 23 Opinion, the Court provided a summary of the status of the remaining claims. That summary follows.

> <u>Defendant UMC</u>:
> All § 1983 claims against UMC are dismissed.  The state law claims against UMC, if any, remain.FN5
> > FN5: The Complaint is not completely clear as to which Defendant(s) the state law claim(s) are asserted.
> <u>Defendants Dr. Daniel Jones, James Roy Klumb, Ed Blakeslee, Thomas W. Colbert, Dr. Richard A. Crofts, Dr. L. Stacy Davidson, Jr., Dr. D. E. Magee, Jr., Dr. Bettye Henderson Neely, Virginia Shanteau Newton, Bob Owens,</u>

> <u>Aubrey Patterson, Robin Robinson, Scott Ross and Amy</u>
> <u>Whitten</u>:
> These Defendants are sued in their official capacities.
> The § 1983 claims against these Defendants for non-
> equitable money damages are dismissed.  The § 1983 claims
> against them for equitable relief remain.  The state law
> claims, if any, remain.FN6
>     FN6: <u>See supra</u>, footnote 5.
> <u>Defendant Paul Trussell, Jr.</u>:
> Trussell is sued in his official capacity and his
> individual capacity.  Because Trussell did not join in
> the Motion to Dismiss, all claims against him remain.

June 23 Opinion, pp. 8-9.

The Motions set forth in the introduction of this Opinion are now ripe for consideration.

## II.  Analysis

### A.  Motions to Strike

The Court must initially consider the Motions to Strike, because the evidence which the parties seek to strike could affect the outcome of the dispositive Motions.  Each of the three Motions to Strike is considered under a separate subheading.

### 1.  Blake's Motion to Strike Certain Exhibits Annexed to Defendant Paul Trussell's Motion to Dismiss / Motion for Summary Judgment

Blake seeks to strike certain exhibits from Trussell's Motion to Dismiss / Motion for Summary Judgment.  First, Blake seeks to strike page 28 of Exhibit "A."  Trussell concedes that page 28 has no relevance to the claims and defenses in this case.  Page 28 of Exhibit "A" is therefore stricken.

Blake seeks to strike Wallace's polygraph exam report (Exhibit "C" to Trussell's Motion to Dismiss / Motion for Summary Judgment) and his own polygraph exam report (Exhibit "G" to Trussell's Motion to Dismiss / Motion for Summary Judgment). Blake provides little argument in support of these prayers for relief. His only arguments are that they "are not competent evidence" (Motion to Strike, ¶ 2) and that they are "inadmissible polygraph examination results" (Motion to Strike, ¶ 6).

To the extent that Blake is arguing that polygraph examination results are per se inadmissible, he is mistaken. A trial court has discretion to admit polygraph examination results into evidence. United States v. Pettigrew, 77 F.3d 1500, 1514 (5th Cir. 1996)(citation omitted). The standard by which to measure the admissibility of polygraph results is the familiar Daubert test. Gibbs v. Gibbs, 210 F.3d 491, 500 (5th Cir. 2000). Blake makes no arguments based on the factors set forth in Daubert. Therefore, the Court will not strike the polygraph examination reports in issue based on incompetency of that evidence.

To the extent that Blake seeks to strike the polygraph examination reports as hearsay and/or unauthenticated evidence, that argument is not well taken either. Technically, an expert report included as an exhibit to a dispositive Motion should be accompanied by an affidavit of the report preparer which attests to its authenticity. No such affidavits were included with the

11

subject polygraph reports.  However, both reports were signed by the polygraph examiner, and Trussell, through his sworn affidavit, attested to the fact that the tests were administered at the behest of UMC.  Also, Blake makes no argument to the effect that the polygraph exams were not administered, or that the results differed from what appears on the face of the exhibits in question.  Under these facts, the Court excuses the requirement of an accompanying affidavit.  The polygraph examination reports are not stricken on the basis of hearsay and/or lack of authentication.

Blake next seeks to strike Exhibit "D" to Trussell's Motion to Dismiss / Motion for Summary Judgment, which is a copy of UMC Executive Committee Minutes of December 1, 2004.  He argues that the minutes should be stricken on the basis of "authenticity" because they conflict with other evidence.  The Court finds that this argument is not well taken.

Blake also seeks to strike several paragraphs of Trussell's Affidavit, which is attached as Exhibit "E" to Trussell's Motion to Dismiss / Motion for Summary Judgment.  To the extent that some of the statements in the Affidavit contain legal conclusions, those statements are stricken.  The Court rejects the remainder of Blake's arguments regarding striking portions of Trussell's Affidavit.

Based on the above holdings, the Court finds that the Motion to Strike Certain Exhibits Annexed to Defendant Paul Trussell's

Motion to Dismiss / Motion for Summary Judgment should be granted in part, and that it should be denied in part.

### 2.   Trussell's Motion to Strike Certain Exhibits

As an exhibit to Blake's Response to Trussell's Motion to Dismiss / Motion for Summary Judgment, Blake included a copy of the UMC Executive Committee Minutes of January 5, 2005.   Trussell argues that this exhibit should be stricken as irrelevant.   The Court finds that this Motion should be denied.

### 3.   Blake's Motion to Strike

Through the Motion to Strike filed by Blake on November 30, 2005, Blake seeks to strike the same Affidavit addressed above in section II.A.1. of this Opinion.   For the reasons stated in that section of the Opinion, the subject Motion should be granted in part and denied in part.

### B.   Defendant Paul Trussell's Motion to Dismiss / Motion for Summary Judgment

Through the Motion to Dismiss / Motion for Summary Judgment, Defendant Trussell seeks to dismiss the § 1983 claims against him in both his official and his individual capacity.   For the reasons set forth in the June 23 Opinion, the official capacity claims against Trussell under § 1983 for non-equitable money damages are dismissed.   The remaining claims against Trussell and the defenses thereto are considered in the following analyses.

### 1.   Section 1983 Claims Against Trussell

The Court begins by analyzing the § 1983 claims asserted against Trussell.   42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the *deprivation of any rights, privileges, or immunities secured by the Constitution and laws*, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

(Emphasis added).   In the subject case, the alleged "deprivation" suffered by Blake was his termination in violation of both the substantive and procedural due process provisions of the United States Constitution.   Separate tests must be considered to determine whether Blake's procedural due process rights and/or his substantive due process rights were violated.

### a.   Procedural Due Process

First considered is Blake's procedural due process claim.   "We analyze procedural due process questions using a two-step inquiry: First, we determine whether the state has deprived a person of a liberty or property interest; if there has been such a deprivation, we must determine whether the procedures relative to that

deprivation were constitutionally sufficient." <u>Welch v. Thompson</u> 20 F.3d 636, 639 (5th Cir. 1994).

It is undisputed that Blake was terminated from his position with UMC *before* the expiration of his one year employment contract expired.  The Court therefore finds that the first test for Blake's procedural due process claim is met, i.e., he was deprived of a property interest. <u>See</u> <u>Stewart v. Bailey</u>, 556 F.2d 281, 285 (5th Cir. 1977); <u>Coggin v. Longview Indep. Sch. Dist.</u>, 337 F.3d 459, 462 (5th Cir. 2003).

Under the second test for Blake's procedural due process claim, the Court must consider whether the procedure surrounding his employment termination was constitutionally sufficient.  The required process due to an employee with a property interest in employment is "a pretermination opportunity to respond, coupled with post-termination administrative procedures...." <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 547-48, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).  If an employer reasonably perceives hazards by retaining the employee during the pendency of the above process, then the problem can be solved by suspension with pay. <u>Id.</u> at 544-45.

In <u>Stewart</u>, 556 F.2d at 285, the United States Court of Appeals for the Fifth Circuit reiterated the four-step process that must be afforded to a teacher before termination from a job in which a property interest has vested.  The steps are:

(a) He be advised of the cause or causes for his termination in sufficient detail to fairly enable him to show any error that may exist;
(b) He be advised of the names and the nature of the testimony of witnesses against him;
(c) At a reasonable time after such advice, he must be accorded a meaningful opportunity to be heard in his own defense; and
(d) That hearing should be before a tribunal that both possesses some academic expertise and has an apparent impartiality toward the charges.

Id. (citation omitted).

In the subject case, the alleged incident of inappropriate sexual conduct occurred on Thursday, September 30, 2004. On the following day, Friday, October 1, 2004, Blake was placed on administrative leave _with pay_. Letter from Turner to Blake dated October 1, 2004, attached as Exhibit "A" to Bill of Particulars; Letter from Woodrell to Blake dated October 1, 2004, attached as Exhibit "B" to Bill of Particulars; Trussell's Affidavit, ¶¶ 5-6, attached as Exhibit "E" to Trussell's Motion to Dismiss / Motion for Summary Judgment.[4] Placing Blake on administrative leave _with pay_ cured any potential prejudice through relieving Blake of his duties pending the outcome of the investigation. See Loudermill, 470 U.S. at 544-45. Also on October 1, Blake was specifically

---

[4] The letter from Turner to Blake is ambiguous in that in one sentence it states that the suspension is _with_ pay, and in another it states that the suspension is _without_ pay. Letter from Turner to Blake dated October 1, 2004, attached as Exhibit "A" to Bill of Particulars. However, both of the other Exhibits cited above state that the suspension was with pay, and the parties appear to agree that Blake was suspended with pay. The Court therefore reasonably assumes that the Blake's October 1 suspension was with pay.

informed of his right to a hearing before the Executive Committee. Letter from Woodrell to Blake dated October 1, 2004, attached as Exhibit "B" to Bill of Particulars.

On October 4, 2004, Trussell and Smith met with Blake to discuss the allegations. Trussell Affidavit, p. 2, ¶ 6, attached as Exhibit "E" to Trussell's Motion to Dismiss / Motion for Summary Judgment. During this meeting, Blake was informed of the allegations against him, informed of who made the allegations, and given an opportunity to convey his rendition of the events. Id.; Transcript of Blake's Recorded Statement of October 4, 2004, attached as Exhibit "G" to Blake's Response to Trussell's Motion to Dismiss / Motion for Summary Judgment. The Court finds that through the two letters to Blake dated October 1 and through the October 4 meeting, the standards for the first two procedural due process steps were met. This finding is based on the facts that Blake was: (a) advised of the reason for his suspension and/or proposed termination in sufficient detail to enable him to show any errors in the allegation of sexual misconduct; and (b) advised that Wallace was the person who made the allegation.

The third step for proper due process is according the employee a meaningful opportunity to be heard in defense of the claims, within a reasonable period of time. The October 1 letter in which Blake was afforded the opportunity to be heard before the Executive Committee satisfied this factor in part, notwithstanding

the fact that Blake did not avail himself of the opportunity.  The October 4 meeting described above further satisfied this requirement in part.  Also, on October 12, 2004, Blake submitted to a polygraph examination regarding his rendition of the subject events.  Blake's Polygraph Examination Report, attached as Exhibit "G" to Trussell's Motion to Dismiss / Motion for Summary Judgment.  Although the results of the polygraph exam were not completely favorable to Blake, the process itself afforded him another meaningful opportunity to be heard in defense of Wallace's allegations against him.

The fourth and final step for proper due process is a hearing before an impartial tribunal.  "The Due Process Clause requires provision of a hearing 'at a meaningful time.'"  *Loudermill*, 470 U.S. at 547 (citation omitted).  As stated above, the hearing may involve less formal proceedings pre-termination, coupled with the *opportunity* for a more formal proceeding post-termination. *Id.* at 547-48.

In this case, Blake was placed on leave with pay on October 1, 2004, one day after the alleged misconduct occurred.  Three days later on October 4, he was given an informal hearing with Trussell, the Director of Human Resources, and Smith, the Equal Employment Opportunity Director at UMC.  Through written correspondences dated November 9, November 15, November 18, and December 2, 2004, the parties proposed resolutions of the matter to each other.  The

18

pivotal issue was expungement of references of the subject incident from Blake's personnel file.  Blake requested the expungement, and UMC refused to comply with the request.  This issue created an impasse.

Based on the breakdown in negotiations, UMC opted to finally terminate its employment relationship with Blake.  The termination notice was embodied in a letter from Trussell to Blake dated December 10, 2004.  In part, the letter stated:

> As a result of unprofessional conduct exhibited by you on or about September 30, 2004, which involved a resident physician, your employment with the University of Mississippi Medical School is herewith terminated effective December 10, 2004.
> * * * * *
> In accordance with UMC policy *you have the right to file a grievance in regards to this decision.  Attached you should find a copy of the grievance procedure*.

Letter from Trussell to Blake dated December 10, 2004, attached Exhibit "I" to Bill of Particulars (emphasis added).  Rather than avail himself of the grievance procedure offered by UMC, Blake filed the subject suit on March 21, 2005.

The Court finds that the fourth step for proper due process was met in this case.  Not only was Blake given a speedy initial hearing to present his version of events, he had the opportunity to engage in a relatively lengthy negotiation process to resolve the issue.  Finally, he was offered the opportunity to avail himself of the standard grievance procedure offered by UMC, but waived that right by failing to take advantage of the procedure.  See Downing v.

Williams, 624 F.2d 612, 630 (5th Cir. 1980), dissent adopted as majority opinion on reh'g, 645 F.2d 1226 (5th Cir. 1981)(holding that an aggrieved employee's failure to take advantage of a due process hearing results in waiver of the right to such hearing). Under these facts, the Court finds that Blake was afforded procedural due process as required by the United States Constitution.

Additionally, UMC complied by its own termination procedures. The Faculty Handbook states:

> Termination for cause of a tenured faculty member or the dismissal for cause of a faculty member prior to the expiration of a term appointment shall not be recommended by the institutional executive officer until the faculty member has been afforded the opportunity for a hearing.
> \* \* \* \* \*
> In all cases, the faculty member shall be informed in writing of the proposed action against him/her and that he/she has the opportunity to be heard in his/her own defense. Within 10 calendar days of notification of the proposed action and opportunity to be heard, the faculty member shall state in writing his/her desire to have a hearing.[5]

Faculty Handbook, p, 25, attached as Exhibit "A" to Trussell's Motion to Dismiss / Motion for Summary Judgment.

---

[5] Blake was a "tenure track" employee, not a "tenured" employee. However, because he was under a one year employment contract, Blake was a faculty member under "a term appointment." The termination procedure for a nontenured track faculty member under a term appointment is stated on page 27 of the Faculty Handbook. See Faculty Handbook, p. 27, attached as Exhibit "A" to Trussell's Motion to Dismiss / Motion for Summary Judgment. The procedure stated on page 27 refers the reader to the procedure stated on page 25 of the Faculty Handbook. Id. The procedure stated on page 25 is cited above.

UMC followed the requirements set forth in the Faculty Handbook.  Blake was informed in writing of the proposed action to be taken against him. Letter from Turner to Blake dated October 1, 2004, attached as Exhibit "A" to Bill of Particulars; Letter from Woodrell to Blake dated October 1, 2004, attached as Exhibit "B" to Bill of Particulars.  He was offered the opportunity for a pre-termination hearing on October 1, 2004. Letter from Woodrell to Blake dated October 1, 2004, attached as Exhibit "B" to Bill of Particulars (stating that "[y]ou are further notified that you may request that the Executive Committee be convened pursuant to Article VIII of the Bylaws.").  He was offered an opportunity for a post-termination hearing through his termination letter dated December 10, 2004. Letter from Trussell to Blake dated December 10, 2004, attached as Exhibit "I" to Bill of Particulars (stating that "you have the right to file a grievance in regards to this decision.").

As stated above, Blake never requested a formal hearing.  This failure on Blake's part does nothing to diminish the fact that UMC complied with procedural due process by making such available to him.  To the extent that Blake contends that he did not request a hearing because the Executive Committee which he would have appeared before was biased against him, that argument is unsupported and without merit.

The Court finds that Blake was not deprived of procedural due
process through his employment termination.   This claim against
Trussell must be dismissed.

### b.   Substantive Due Process

Next considered is Blake's substantive due process claim.  The
two-part test for a substantive due process claim was articulated
by the Fifth Circuit in <u>Mikeska v. City of Galviston</u>, 419 F.3d 431
(5th Cir. 2005).   Substantive due process claims require the
satisfaction of two tests.  "First, [a plaintiff] must allege a
deprivation of a constitutionally protected right." <u>Id.</u> at 434
(citation omitted).   The second test is whether the governmental
action was 'rationally related to a legitimate governmental
interest.'" <u>Id.</u> (citation omitted).

It is undisputed that Blake was terminated from his position
with UMC <u>before</u> the expiration of his one year employment contract.
The Court therefore finds that the first test for Blake's due
process claim is met, i.e., he was deprived of a constitutionally
protected right. <u>See</u> <u>Stewart</u>, 556 F.2d at 285; <u>Coggin</u>, 337 F.3d at
462.

Under test two, Blake's termination must have been rationally
related to a legitimate governmental interest.  Stated another way,
Blake must prove that his termination "was <u>arbitrary</u> or not
reasonably related to a legitimate governmental interest." <u>Williams
v. Texas Tech Univ.</u>, 6 F.3d 290, 294 (5th Cir. 1993)(emphasis

22

added; citation omitted).   Further, "[j]udicial evaluation of academic decisions requires deference and they are overturned only if they are 'such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'" Id. (citing Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985)).

Based on the facts as presented in section I. of this Opinion, and based on and the analyses and facts presented in section II.B.1.a. of this Opinion, the Court finds that Blake has failed to meet the second test for his substantive due process claim.   That is, his employment termination for the reasonably well supported allegation of sexually inappropriate behavior was rationally related to a legitimate government interest.   Accordingly, the substantive due process claim against Trussell must be dismissed.

**c.   Qualified Immunity**

In the alternative to the above holdings, the Court finds that Trussell is entitled to qualified immunity with regard to the § 1983 claims asserted against him in his individual capacity. Qualified immunity applies to public officials in their *individual* capacities, and not in their *official* capacities. Foley v. Univ. of Houston Sys., 355 F.3d 333, 337 (5th Cir. 2003)(citation omitted). Under Foley, qualified immunity applies to § 1983 claims. Id. at 338.   The Foley opinion continues by holding that

23

> [i]n addressing the claim of a public official to
> qualified immunity, we engage in a two-step analysis.
> First, we must determine whether the plaintiff has made
> a sufficient showing that the official violated a clearly
> established constitutional or statutory right. If the
> answer is in the affirmative, we then ask whether the
> official's actions were objectively reasonable in light
> of the clearly established right. <u>Siegert v. Gilley</u>, 500
> U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

<u>Id.</u> at 337.

Regarding the second factor, "[p]ublic officials are entitled to qualified immunity when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Foley</u>, 355 F.3d at 337 (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). However, "the 'reasonable person' step is not reached unless the court first finds that the conduct alleged by the plaintiff, if proved, would constitute a violation of his clearly established rights." <u>Id.</u> (citation omitted).

Applying these standards to the subject case, the Court finds that although Blake was denied the right to complete his one year employment contract, the denial of that right was justified under the employment contract provision for termination based on "contumacious conduct." <u>See</u> Employment Contract, attached as Exhibit "K" to Bill of Particulars. Trussell's termination of Blake's employment with UMC was objectively reasonable under the facts of this case. For these reasons, the Court finds that

24

Trussell is entitled to qualified immunity with regard to the § 1983 claims asserted against him in his individual capacity.

### d.   Conclusion - § 1983 Claims Against Trussell

Blake has failed to make a showing that Trussell deprived him of any rights, privileges, or immunities secured by the Constitution, as contemplated by the provisions of § 1983 and related case law.   Therefore, the § 1983 claims against Trussell must be dismissed.   This dismissal includes official capacity and individual capacity claims, as well as monetary and non-monetary equitable claims asserted against Trussell under § 1983.   In the alternative, Trussell is shielded by qualified immunity from liability for all of the § 1983 claims asserted against him in his individual capacity.

### 2.   State Law Claims Against Trussell

The Complaint is not completely clear as to whether state law claims are asserted against Trussell.   The state law claims were not addressed in Trussell's Motion to Dismiss / Motion for Summary Judgment.   Therefore, to the extent that state law claims are asserted against Trussell, those claims cannot be dismissed through Trussell's Motion.   It does appear, however, that the claims against Trussell are included in the Motion to Dismiss and Motion for Summary Judgment analyzed below.   See Defendants' Brief in Support of Motion to Dismiss and Motion for Summary Judgment as to Equitable and State Law Claims (docket entry no. 30), p. 1 (stating

that UMC "and all other named defendants" joined in the Motion).
The state law claims against Trussell will be addressed below
accordingly.

**C.   Motion to Dismiss and Motion for Summary Judgment of Defendant
      UMC and Other Individual Defendants**

    **1.   Section 1983 Substantive and Procedural Due Process
      Claims**

For the reasons set forth above in sections II.B.1.a. and b.
of this Opinion, all § 1983 claims against the moving Defendants
must be dismissed.

    **2.   State Law Claims**

Defendants also seek dismissal of the state law claims against
them.  The state law claims are: mental anguish, Complaint, p. 4,
¶ 18; damage to professional reputation, Complaint, p. 4, ¶ 18;
breach of contract, Complaint, p. 4, ¶ 20; punitive damages,
Complaint, p. 4, ¶ 21; and an alternative claim - acceptance of
Blake's resignation from his position as Assistant Professor of
Surgery in return for reinstatement of his staff privileges as a
physician at UMC, and expungement of Blake's personnel file in
regard to his suspension, Complaint, p. 5, ¶ 24.  Each of these
claims is addressed below.

    **a.   Breach of Contract**

Blake contends that UMC breached its employment contract with
him by unilaterally terminating their employment relationship
before expiration of the one year contract term.  The Court finds

26

that this argument is without merit because the employment contract contained a for cause termination provision for "contumacious conduct." <u>See</u> Employment Contract, attached as Exhibit "K" to Bill of Particulars.  The evidence before the Court indicates that UMC was within its rights to terminate Blake because the alleged inappropriate sexual conduct fell under the purview of "contumacious conduct."  Further, the evidence gathered by UMC indicated a reasonable probability that Blake engaged in the alleged misconduct.  For these reasons, the breach of contract claim will be dismissed.

### b.   Damage to Professional Reputation

In order for Blake to succeed on his damage to professional reputation claim, Defendants must have <u>*wrongfully*</u> taken some action to damage Blake's reputation.  Based on the facts before the Court, Defendants operated within their allowable bounds in all dealings with Blake and, therefore, engaged in no wrongful action.  This claim must be dismissed.

### c.   Mental Anguish

Blake does little to develop his mental anguish claim.  That claim must be dismissed because under Mississippi law, "a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." <u>Lee v. Golden Triangle Planning & Dev. Dist., Inc.</u>, 797

So.2d 845, 851 (Miss. 2001)(citation omitted); <u>Starks v. City of
Fayette</u>, 911 So.2d 1030, 1036 (Miss. Ct. App. 2005)(citations
omitted). Such a claim "will not ordinarily lie for mere
employment disputes." <u>Lee</u>, 797 So.2d at 851 (citation omitted);
<u>Starks</u>, 911 So.2d at 1036 (citations omitted). "Only in the most
unusual cases does the conduct [of an employer] move out of the
realm of an ordinary employment dispute into the classification of
extreme and outrageous, as required for the tort of intentional
infliction of emotional distress." <u>Raiola v. Chevron, U.S.A., Inc.</u>,
872 So.2d 79, 85 (Miss. 2004)(citation omitted). Blake has failed
to meet his burden to come forth with evidence sufficient to meet
the above standards, thus the claim for mental anguish must be
dismissed.

> **d.    Alternative Claim - Acceptance of Blake's
> Resignation from his Position as Assistant
> Professor of Surgery in Return for Reinstatement of
> his Staff Privileges as a Physician at UMC, and
> Expungement of Blake's Personnel File in Regard to
> his Suspension**

Blake argues that an agreement was made in which he would
resign from his position as Assistant Professor of Surgery in
return for: (1) reinstatement of his staff privileges as a
physician at UMC; and (2) expungement of Blake's personnel file in
regard to his suspension. As described in detail in section I. of
this Opinion, the parties engaged in ongoing negotiations regarding
this issue. Ultimately, UMC refused to agree to expunge Blake's

personnel file.   Cofer nevertheless offered to recommend the
restoration of Blake's hospital privileges, if Blake would agree to
resign from his job as Assistant Professor of Surgery. See letter
from Cofer to Horn dated December 2, 2004, attached Exhibit "H" to
Bill of Particulars.   That offer was to remain open until December
3, 2004. Id.  With Blake's failure to accept the offer by December
3, the offer expired by its own terms, which renders the subject
claim without merit and ripe for dismissal.

### e.   Punitive Damages

With the dismissal of all of Blake's substantive state law
claims, the claim for punitive damages must be dismissed as well.

### f.   Conclusion - State Law Claims

Based on the above analyses, the Court finds that all of the
state law claims against all of the Defendants should be dismissed.

### III.   Conclusion

Defendants have met their burden to prove that no genuine
issues of material fact exist with regard to Blake's claims against
them.   This suit must therefore be dismissed in its entirety.

Based on the holdings presented above:

IT IS THEREFORE ORDERED that Defendant Paul Trussell's Motion
to Dismiss / Motion for Summary Judgment (docket entry no. 25) is
hereby granted.

IT IS FURTHER ORDERED that the Motion of Defendant University
of Mississippi Medical Center to Dismiss and Motion for Summary

Judgment as to Equitable and State Law Claims (docket entry nos. 28 and 29) are hereby granted.

IT IS FURTHER ORDERED that Plaintiff Roger Blake's Motion to Strike Certain Exhibits Annexed to Defendant Paul Trussell's Motion to Dismiss / Motion for Summary Judgment (docket entry no. 44) is hereby granted in part and denied in part, in accordance with the holdings presented above.

IT IS FURTHER ORDERED that Defendant Paul Trussell's Motion to Strike Certain Exhibits (docket entry no. 61) is hereby denied.

IT IS FURTHER ORDERED that Plaintiff Roger Blake's Motion to Strike (docket entry no. 70) is hereby granted in part and denied in part, in accordance with the holdings presented above.

A Final Judgment will be entered which dismisses this case with prejudice.

SO ORDERED this the 28th day of March, 2006.


                                    s/ William H. Barbour, Jr.
                                    UNITED STATES DISTRICT JUDGE

tct